AARON J. PRISBREY, P.C.
Aaron J. Prisbrey, #6968
Elizabeth B. Grimshaw, #8854
Attorney for Plaintiff Judy Robbins
1090 East Tabernacle Street
St. George, Utah 84770
Telephone (435) 673-1661
taysha@prisbreylaw.com

C. REED BROWN, P.C.
C. Reed Brown, #0446
Attorney for Plaintiff Wesley Robbins
1232 W. Lexington Street
Washington, UT 84780
Telephone (801) 232-8737
reed.crb@gmail.com

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JUDY ROBBINS and REGINALD WESLEY ROBBINS,<br><br>              Plaintiffs,<br><br>v.<br><br>FLIGHTSTAR, INC. dba FLIGHT DESIGN USA, a Connecticut company, LIGHT SPORT AIRPLANES WEST, LLC, a California company, SHAWN KELLY, an individual, JOHN DOES I – X, and ROE CORPORATIONS XI - XX<br>              Defendants. | **AMENDED COMPLAINT**<br><br><br>Case No.:  2:09-cv-735<br>Magistrate Judge: Samuel Alba |

Plaintiffs, by and through counsel, hereby complain and allege as follows:

**PARTIES, JURISDICTION, VENUE, AND CHOICE OF LAW**

1.  Plaintiff Judy K. Robbins ("Ms. Robbins") is an individual who resides in St. George, Washington County, State of Utah and is married to Plaintiff Reginald Wesley Robbins

1

at all times relevant.

2. Plaintiff Reginald Wesley Robbins ("Mr. Robbins") is an individual who resides in St. George, Washington County, State of Utah and is married to Mrs. Robbins at all times relevant.

3. Defendant Flightstar, Inc. dba Flight Design USA ("Flight Design USA") is a Connecticut company with its principal place of business in Woodstock, Windham County, Connecticut.

4. At all times mentioned herein, Flight Design USA designs and manufactures the Flight Design CTSW aircraft. Flight Design USA has maintained and continues to maintain an interactive website through which it markets, issues airworthiness directives and service bulletins, and directs business over the internet to Utah residents at www.flightdesignusa.com. The website allows customers to search for specific products, view product descriptions, pictures, log in, identify Flight Design distributors, dealers, and associate dealers and contact Flight Design USA through its website or contact a distributor or dealer who markets specifically to Utah residents.

5. This court has general personal jurisdiction over Flight Design USA. Based upon Flight Design USA'a direct marketing efforts to Utah residents through its interactive website as well as maintaining a system of distributors, dealers, and associate dealers who sell and service Flight Design USA aircrafts to customers who reside in the state of Utah, Flight Design USA has purposefully availed itself of the privilege of doing business in the State of Utah and is therefore subject to general personal jurisdiction in the state of Utah.

6. This court has specific jurisdiction over Flight Design USA under Utah Code Ann. § 78B-3-205(2) and (3), as the subject matter of this action arises out of Flight Design USA's design, manufacture and sale of goods to Utah, and causing of tortious injury to Plaintiffs in the state of Utah. Flight Design USA designed and manufactured the Flight Design CTSW aircraft purchased by Plaintiffs, the defective design of which caused the aircraft to malfunction and crash in Utah while Plaintiff was en route to his home in Utah.

7. Defendant Light Sport Airplanes West, LLC ("Airplanes West"), at the time the Robbins purchased the aircraft was a California company with its principal place of business in Salinas, Monterey County, California. Airplanes West was engaged in the business of selling new and used light sport airplanes. Upon information and belief, Airplanes West has since closed its business.

8. At the time the Robbins were shopping for their aircraft, Airplanes West maintained an interactive website through which it marketed and directed business over the internet to Utah residents at www.lightsportairplaneswest.com. Upon information and belief, the website allowed customers to search for specific products, view product descriptions, pictures, and videos, and contact Airplanes West sales staff through its website. Specifically, Airplanes West directly marketed the 2005 Flight Design CTSW aircraft purchased by the Robbins over the internet on its website. Moreover, the Robbins purchased the 2005 Flight Design CTSW from Airplanes West and wired a $10,000.00 deposit from their Utah bank account to Airplanes West, and paid approximately $6,000.00 in Utah sales tax on the purchase. Airplanes West provided flight training and certification to Mr. Robbins as part of the purchase, performed the

annual maintenance on the aircraft shortly before Mr. Robbins took possession of the aircraft, and put fuel in the tank before the Robbins took off to take their 2005 Flight Design CTSW back to their home in Utah.

9. This court has general personal jurisdiction over Airplanes West. Based upon Airplanes West's direct marketing efforts to Utah residents through its interactive website marketing aircrafts to Utah residents as well as it actual business dealings with the Robbins, with knowledge that the Robbins were Utah residents who purchased the aircraft with the intent of returning back to Utah with it, combined with the fact that Airplanes West provided all maintenance and upkeep, including fueling the aircraft immediately prior to the Robbins' return to Utah, Airplanes West has purposefully availed itself of the privilege of doing business in the State of Utah and is therefore subject to general personal jurisdiction in the state of Utah.

10. This court has specific jurisdiction over Airplanes West under Utah Code Ann. § 78B-3-205(2) and (3), as the subject matter of this action arises out of Airplane West's sale of goods to Utah, and causing of tortious injury to Plaintiffs in the state of Utah. Airplanes West provided the annual inspection, flight training, final maintenance, including the fueling the aircraft in preparation for the Robbins' trip back to Utah. Upon information and belief, Airplanes West was negligent in its maintenance of the aircraft and flight instruction given to Mr. Robbins, which negligence contributed to the aircraft's malfunction and crash in Utah while Plaintiffs were en route to their home in Utah.

11. Defendant Shawn Kelley is an individual who, upon information and belief, lives in Salinas, California and worked as an employee of Airplanes West and provided flight

instruction to Mr. Robbins and fueled the aircraft immediately before the Robbins flew the aircraft to their home in Utah.

12. Defendant Kelley was an agent of Defendant Airplanes West and was at all times relevant to this action, acting in the course and scope of his employment with Airplanes West.

13. Airplanes West is liable to the Robbins for the actions of Defendant Kelley under the doctrine of agency.

14. This court has specific jurisdiction over Shawn Kelley under Utah Code Ann. §78B-3-205(2) and (3), as the subject matter of this action arises out of Kelley's flight instruction incident to the sale of goods to Utah, and causing of tortious injury to Plaintiffs in the state of Utah. Defendant Kelley provided flight training, and fueled the aircraft in preparation for the Robbins' trip back to Utah. Kelley was negligent in the manner in which he gave flight instruction to Mr. Robbins specific to the Flight Design CTSW and negligent in the manner in which he fueled the aircraft immediately prior to the Robbins' return trip to Utah, which negligence contributed to the aircraft's malfunction and crash in Utah while Plaintiffs were en route to their home in Utah.

15. Defendants John Does I – V and Roe Corporation VII – X are unknown defendants who may bear responsibility for the Plaintiffs' injuries.

16. This court has subject matter jurisdiction under 28 U.S.C.S. § 1332(a) as the matter in controversy exceeds $75,000.00 and this action is between citizens of different states and a subject of a foreign state.

17. Venue is proper in this court pursuant to 28 U.S.C. § 1391(a)(1) and (2) as

Defendants are subject to personal jurisdiction in this court and the cause of action arose in the District of Utah.

18. With respect to choice of law, Utah bears the most significant relationship to the underlying tort at issue in this case. Although the negligent acts alleged herein occurred in California and perhaps other locations unknown to Plaintiffs at this time, the relationship between the parties is centered in Utah. Plaintiffs are Utah residents who were marketed to by Defendants Flight Design USA and Airplanes West over the internet in Utah. Defendants Airplanes West and Shawn Kelley sold the aircraft to Plaintiffs knowing that it would be taken to Utah. Defendants reasonably anticipated that Plaintiffs would not encounter the danger caused by the defects in engine and aircraft design until a later date, most likely after the aircraft was taken to their residence, which in this case is Utah, and the accident and injuries to Plaintiffs occurred in Utah.

## GENERAL ALLEGATIONS

19. The preceding paragraphs are incorporated herein by reference.

20. During the summer of 2007, the Robbins' began shopping for a light sport aircraft and conducted research over the internet from their residence in Utah.

21. Mr. Robbins became aware of a used 2005 Flight Design CTSW with approximately 400 hours of flight time on it for sale at Airplanes West, which Mr. Robbins viewed photographs, videos and specifications via Airplanes West's website as well as other

websites.

22. Mr. Robbins agreed to purchase the 2005 Flight Design CTSW, registration N775CT, (the "Aircraft") from Airplanes West for a total purchase price of approximately $85,000.00 and wired a $10,000.00 deposit from their Utah bank account to Airplanes West.

23. On or about August 22, 2007, Mr. Robbins flew to San Jose, California to receive flight training and take the Aircraft back to his home in Utah.

24. Defendant Shawn Kelley picked Mr. Robbins up at the San Jose, California airport in the Aircraft and began giving flight instruction to Mr. Robbins on the Aircraft.

25. Over the next three days, Mr. Robbins received additional flight instruction from Defendant Kelley and completed a flight review of the Aircraft.

26. On or about August 22, 2007, Airplanes West performed the annual inspection and maintenance of the Aircraft, including servicing the ROTAX engine.

27. On or about August 25, 2007, Mrs. Robbins flew to San Jose, California in order to fly back to Utah with Mr. Robbins.

28. At that time, the Robbins made final payment on the purchase price and planned to take the Aircraft back to his residence in St. George, Utah.

29. Immediately prior to beginning the return trip to Utah, Defendant Kelley re-fueled the Aircraft and advised Mr. Robbins not to top off the fuel or check it as that might interfere with the correct pressurization of the fuel.

30. Unbeknownst to the Robbins, the Aircraft contained defects in the fuel supply, delivery, and monitoring system.

31. On or about August 25, 2007, Mr. Robbins flew the Aircraft to his home in St. George, Utah.

32. Mrs. Robbins traveled as a passenger on the August 25, 2007 flight from Salinas, California to their home in St. George, Utah.

33. Prior to leaving Salinas, Defendant Kelley confirmed to Mr. Robbins that the fuel levels were full, with more than enough fuel to make the trip from Salinas to St. George.

34. When the Robbins' were approximately 20 miles from their destination in St. George, Utah, the engine began to sputter and Mr. Robbins adjusted the choke setting. At that time, the Robbins could see that there was not a fuel shortage.

35. However, about 5 miles from St. George, Mr. Robbins was preparing to land his aircraft when the engine stopped completely.

36. At that time, it appeared to the Robbins that there was no more fuel available to the engine.

37. Mr. Robbins was unable to land successfully at the airport and crash-landed near Bluff Street in St. George, Utah.

38. The aircraft hit the ground, flipped over, and came to rest upside down with Mr. and Mrs. Robbins hanging upside down and unable to extricate themselves from rubber-like cables that had become wrapped around their lower legs at some point during the crash-landing. In addition, the aircraft was leaking fuel onto Mr. and Mrs. Robbins. They had to be extricated from the aircraft with the help of the St. George police and fire departments.

39. Fuel continued to leak from the wreckage the day after the crash.

40. As a direct result of the accident, Mr. Robbins sustained serious injuries, including two splintered ankles, one of which has since resulted in the amputation of his foot, and a broken right arm and he has required ongoing medical treatment since then to address his injuries, some of which may be permanent in nature.

41. As a direct result of the accident, Mrs. Robbins sustained serious injuries as well including a multiple fracture at her left ankle and lacerations on both lower legs just above the ankle and she has required ongoing medical treatment since then to address her injuries, some of which may be permanent in nature.

42. As a direct and proximate result of Defendants' actions, Plaintiffs have incurred expenses for medical care, treatment and expenses incidental thereto, all to Plaintiffs' damage in an amount to be proved at trial, but not less than $300,000.00.

43. As a direct and proximate result of Defendants' actions, Plaintiffs will also, to a reasonable degree of medical certainty or probability, incur medical expenses in the future relating to the treatment of injuries sustained due to Defendants' actions, in an amount to be proved at time of trial in this matter.

44. As a result of Defendants' actions, Plaintiffs have suffered loss of household services in an amount to be proved at trial.

45. As a consequence of said injuries, Plaintiffs have suffered, continue to suffer, and will for an indefinite period of time in the future, suffer severe and excruciating physical and mental pain and discomfort due to their injuries. Furthermore, some of Plaintiffs' injuries are likely to be permanent in nature.

46. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered general damages including physical pain and suffering, emotional pain and suffering, loss of enjoyment of life, permanent impairment and/or disability, scarring, and increased likelihood of re-injury or aggravation to a preexisting condition in an amount to be proved at trial.

### FIRST CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY
### DEFECTIVE DESIGN AND MANUFACTURE

47. The preceding paragraphs are incorporated herein by reference.

48. Defendant Flight Design USA designs, manufactures, and markets the aircraft purchased by the Robbins.

49. At the time Mr. Robbins purchased his Aircraft, the Flight Design CTSW aircraft contained design and/or manufacturing defects in the fuel supply, delivery, and monitoring system.

50. These defects caused the Aircraft to starve the engine of fuel, despite the adequacy of fuel levels, during the Robbins' flight, and leak fuel into the airplane compartment, which made the CTSW unreasonably dangerous as an aircraft designed, manufactured, and marketed as being able to fly safely under the circumstances and conditions which Mr. Robbins flew his Aircraft.

51. Flight Design USA committed other acts or omissions causing the aircraft purchased by the Robbins to be defective, which may be revealed during discovery of this matter.

52. Upon information and belief, Defendants violated safety standards in the industry in the design and construction of the Aircraft and its component parts, which safety standards were intended to protect Plaintiffs from the type of harm they suffered in the accident.

53. These defects were present at the time Defendants designed, manufactured and distributed the Aircraft, or its components which Mr. Robbins purchased.

54. With respect to the defective design of the Aircraft and/or its component parts, a safer, cost-effective alternative existed at the time the Aircraft and/or its component parts were designed.

55. These defects caused the Robbins' Aircraft engine to fail mid-flight, despite adequate fuel levels, and force Mr. Robbins to crash-land the aircraft, which further resulted in the leakage of fuel into the aircraft compartment after the forced landing, and the Plaintiffs' resulting injuries as set forth herein.

56. Mr. Robbins did not discover deficiencies in the design and/or manufacture of his aircraft until his engine failed mid-flight on August 25, 2007.

57. Upon information and belief, other Flight Design CTSW aircrafts designed, manufactured, and distributed by Flight Design USA have involved similar problems related to the fuel supply, delivery and monitoring system.

## SECOND CAUSE OF ACTION
## STRICT LIABILITY
## FAILURE TO WARN

58. The preceding paragraphs are incorporated herein by reference.

59. Defendants Flight Design USA, Airplanes West, and Shawn Kelley knew, or

11

reasonably should have known about the dangers posed by the defects in design and manufacture of the Aircraft that a reasonable user would not expect, such as engine failure mid-flight despite adequate fuel levels.

60. Defendants committed other acts or omissions which may be revealed during discovery of this matter of which they should have known would pose an unreasonable danger to consumers purchasing the 2005 model Flight Design CTSW aircraft.

61. Upon information and belief, Defendants violated safety standards established in the industry, which safety standards were intended to protect Plaintiffs from the type of harm they suffered in the accident.

62. Defendant Flight Design USA was required to warn about the dangers posed by the defects in design and manufacture which led to fuel starvation to the engine during normal operation of the aircraft.

63. Defendants Airplanes West and Shawn Kelley were required to warn about dangers unique to the Aircraft in connection with the flight instruction they provided to Mr. Robbins as part of the Robbins' purchase of the Aircraft.

64. Defendants Flight Design USA, Airplanes West, and Shawn Kelley failed to provide adequate warnings to consumers, including the Robbins, at the time the Aircraft was manufactured, distributed and sold.

65. The lack of an adequate warning made the aircraft defective and unreasonably dangerous.

66. The lack of an adequate warning was a cause of the Plaintiffs' injuries as set forth

herein as they had no foreseeable reason to fly the aircraft other than as indicated by its specifications and in the manner in which Mr. Robbins was instructed.

### THIRD CAUSE OF ACTION
### NEGLIGENCE
### FLIGHT DESIGN USA

67. The preceding paragraphs are incorporated herein by reference.

68. The Flight Design CTSW, 2005 model purchased by the Robbins was defective in the following respects:

   a. Defective design

   b. Defective manufacture

   c. Failure to provide adequate warning

69. The defects made the Flight Design CTSW 2005 model aircraft unreasonably dangerous, including engine failure during flight.

70. Defendants committed other negligent acts or omissions which may be revealed during discovery of this matter.

71. Defendants violated safety standards established in the industry in the design, construction, and issuance of warnings of the Aircraft and its component parts, which safety standards were intended to protect Plaintiffs from the type of harm they suffered in the accident.

72. The aircraft's defect was the result of Defendants' failure to use reasonable care in the design, manufacture, and notification by warning of the aircraft's engine failure potential.

73. The defect caused injuries to Plaintiffs as set forth herein.

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE**
**AIRPLANES WEST AND SHAWN KELLEY**

74. The preceding paragraphs are incorporated herein by reference.

75. As an alternative theory, Defendants Airplanes West and Shawn Kelley had a duty to maintain the Aircraft and provide flight instruction in a reasonable manner, including performing maintenance as required by industry standards and according to maintenance bulletins provided by the manufacturers of the Aircraft or its component parts.

76. Defendants were negligent in the following respects:

   a. Failed to perform maintenance properly on the Aircraft;

   b. Failed to provide adequate flight instruction;

   c. other acts or omissions which may be revealed during discovery of this matter.

77. As a direct and proximate result of Defendants' negligence, Plaintiff suffered injury as set forth above when the Aircraft engine failed mid-flight and the Plaintiffs were forced to crash-land, causing injury to both of the Robbins.

78. As a direct and proximate result of Defendants' negligence, Plaintiffs suffered injury as set forth herein and have incurred medical care in an amount exceeding $300,000.00, including the amputation of Mr. Robbins' foot resulting from the accident. In addition, the Robbins have other monetary damages stemming from the accident as alleged herein.

## FIFTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

79. The preceding paragraphs are incorporated herein by reference.

80. Defendants Flight Design USA, Airplanes West, and Shawn Kelley created express warranties of the Aircraft and its component parts by providing descriptions, photographs, and technical specifications on their respective websites that reasonably persuaded Mr. Robbins to rely on the representations of safety.

81. The operation of the Aircraft purchased by the Robbins did not conform to the descriptions and technical specifications offered by the Defendants, respectively.

82. As a result, the Plaintiffs were harmed in their foreseeable use of the Aircraft and suffered injuries as set forth herein.

83. The failure of the Aircraft to conform to the warranty was a cause of the Plaintiffs' harm.

84. The Plaintiffs could have reasonably been expected to fly the Aircraft from Salinas, California to St. George, Utah on less than one full tank of fuel according to the technical specifications offered by the Defendants respectively and the representations of Defendant Shawn Kelley.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

1. For past, present, and future special damages including medical expenses, household

15

assistance, impairment of earning capacity, consequential damages, and other out-of-pocket expenses in an amount to be proved at trial, but not less than the amounts alleged herein;

2. For past, present, and future general damages, including physical pain and suffering, emotional pain and suffering, loss of enjoyment of life, permanent impairment and/or disability, scarring, and increased likelihood of re-injury or aggravation to a preexisting condition in an amount to be established at trial, but not less than the amounts alleged herein;

3. For costs of suit incurred by Plaintiff;

4. Under the provisions of UTAH CODE ANN. §78B-5-824, Plaintiff is entitled to interest at the rate of 10% per annum on all items of special damage from the date of the accident to the date of the entry of judgment.

5. For interest on general damages at the highest rate allowed by law from the date judgment is entered;

6. For such other relief as the Court deems just and equitable under the circumstances.

DATED this 12th of February, 2010

AARON J. PRISBREY, P.C.

_____
Aaron J. Prisbrey
Elizabeth B. Grimshaw
Attorneys for Plaintiff Judy Robbins