IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JUDY ROBBINS and REGINALD WESLEY ROBBINS<br><br>Plaintiffs,<br><br>v.<br><br>FLIGHTSTAR, INC. dba FLIGHT DESIGN USA, LIGHT SPORT AIRPLANES WEST, LLC, SHAWN KELLY, FLIGHT DESIGN GmbH Flugsportgerate,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:09-CV-735<br><br>Judge Clark Waddoups |

## INTRODUCTION

Judy and Reginald Robbins bring this action against Defendants to recover for injuries they suffered in a plane crash on August 25, 2007. Plaintiffs assert various strict liability and negligence claims against Defendants, alleging that improper designs, maintenance, and training of the aircraft led to their injuries. Defendant Light Sport Airplanes West, LLC ("Airplanes West") moves to dismiss on the basis that the court lacks personal jurisdiction. The court finds that Plaintiffs have not met their burden to show that Airplanes West had such minimum contacts with Utah in order to exercise jurisdiction, and therefore grants the motion to dismiss.

## BACKGROUND

During the summer of 2007, Reginald and Judy Robbins began shopping for a light sport aircraft from their residence in Utah. (3rd Am. Compl., ¶ 24.) Conducting research over the internet, Mr. Robbins became aware of a used 2005 Flight Design CTSW for sale. (3rd Am.

1

Compl., ¶¶ 24, 26.) Through the use of Airplanes West's website, Mr. Robbins learned more about the plane and was able to find the company's contact information. (Pls.' Mem. Opp'n Mot. to Dismiss, 5.) Although the website provided picture and information, there was no feature by which a consumer could pay for a particular product. (Def.'s Mem. Supp. Mot. to Dismiss, 3.) Mr. Robbins called and left a message with Airplanes West, who later called him back and began contracting for the sale of the plane. (Pls.' Mem. Opp'n Mot. to Dismiss, 5.) It is unclear from the allegations in the complaint whether Mr. Robbins signed the contract in Utah, but Airplanes West sent Mr. Robbins a proposed form contract for purchase of the airplane. (Reginald Wesley Robbins Aff. Ex. A, ECF No. 26.) Mr. Robbins wired a $10,000 deposit from their Utah bank to Airplanes West. (3rd Am. Compl., ¶ 8.) The Robbins then travelled to San Jose, California to receive flight training, pay the remainder of the amount due, and then fly the aircraft back to his home in Utah. (3rd Am. Compl., ¶ 27-28.) The sale was completed in California (3rd Am. Compl., ¶ 33.) During the flight back to Utah, the plane exhibited various problems towards the end of the flight and ultimately crashed about 5 miles from Plaintiffs' destination. (3rd Am. Compl., ¶¶ 39-42.) Plaintiffs sustained a number of injuries, which gives rise to the causes of action in the complaint. (3rd Am. Compl., ¶¶ 45-51.) Plaintiffs allege, among other things, that the plane contained design and/or manufacturing defects in its fuel system and that Airplanes West knew or reasonably should have known about the dangers posed by the defects and failed to warn the Robbins. (3rd Am. Compl., ¶ 35, 64, 73-74.) Plaintiffs further allege that Airplanes West failed to properly maintain the plane and failed to provide adequate flight instruction. (3rd Am. Compl., ¶¶ 68, 73-74.)

## DISCUSSION

### I. STANDARD FOR MOTION TO DISMISS

When the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists. *See Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995). Where there has been no evidentiary hearing and the court considers the motion to dismiss on the basis of affidavits and other written materials, the plaintiff has the light burden of needing only to make a prima facie showing. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). In determining whether such a showing exists, the court will consider the allegations in the complaint to be true and resolve all factual disputes in the plaintiff's favor. *See Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988) (internal citations omitted).

### II. PERSONAL JURISDICTION

#### A. General and Specific Jurisdiction

Apart from making brief mention of it in their complaint, Plaintiffs present no argument that suggests that this court has general jurisdiction over Airplanes West. (3rd Am. Compl., ¶ 9.) The contention was not defended in Plaintiff's memorandum in opposition to the motion to dismiss or in the hearing, and is therefore disregarded. In regards to specific jurisdiction, the Tenth Circuit requires a showing of the following three prongs: (1) that defendant's actions or contacts implicate the state's long-arm statute; (2) that a nexus exists between the plaintiff's claims and the defendant's actions or contacts; and (3) that the application of the state's long-arm statute satisfies the requirements of federal due process. *See Soma Med. Int'l v. Standard Charter Bank*, 196 F.3d 1292, 1297 (10th Cir. 1999). As per the first prong, Utah's long-arm statute extends to the full extent permitted by the due process clause. *Id.* The second prong is met on the face of the complaint. The third prong is the focus of this analysis.

## B. The Due Process Analysis for Personal Jurisdiction

The Due Process requirement of personal jurisdiction is intended to provide individuals "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign, [and give] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King*, 471 U.S. 462, 472 (1985) (internal citations omitted). Stated in simpler terms, a court should only find personal jurisdiction over the defendant who "should reasonably anticipate being haled into court there." *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). Following these principles, the law now requires that (1) the plaintiffs make a prima facie showing that the defendants established minimum contacts with the forum state; and (2) that the exercise of jurisdiction will not offend the traditional notions of fair play and substantial justice. *See Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276-77 (10th Cir. 2005).[1]

In order to meet the minimum contacts test, the Supreme Court requires that a defendant (1) had "purposefully directed his activities at residents of the forum," and (2) that the "litigation results from alleged injuries that arise out of or relate to *those* activities." *See Burger King*, 471 U.S. at 472. The Tenth Circuit has applied this standard in various ways depending on the facts of the case. In cases of intentional tort, the Tenth Circuit has outlined a rather bright line rule. *See Rusakiewicz v. Lowe*, 556 F.3d 1095, 1101 (10th Cir. 2009) (stating that "those who support and authorize funding of intentional tortious conduct must be subject to personal jurisdiction in the state where the tort took place and where they committed the acts that supported the tort."). In contrast, an analysis revolving around business relationships and commercial transactions, as

---

[1] Because the court finds that Airplanes West's contacts do not give rise to personal jurisdiction, an analysis of the traditional notions of fair play and substantial justice is moot.

found in this case, requires that a plaintiff show that a defendant "purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov v. Chalk & Vermilion fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (internal citations omitted); *see also, Rambo*, 839 F.2d at 1417 (stating that "[t]he sufficiency of a defendant's contacts must be evaluated by examining the defendant's conduct and connections with the forum state to assess whether the defendant has purposefully avail[ed] itself of the privilege of conducting activities within the forum State." ) (internal citations omitted). In determining whether such minimum contacts exist, the court will look at a defendant's actions toward the forum state collectively, rather than in isolation. *See Sys. Designs, Inc. v. New CustomWare Co.*, 248 F. Supp. 2d 1093, 1104 (D. Utah 2003). Plaintiff asserts that Airplanes West made numerous contacts with the forum state, which the court now considers in turn.

### 1. Place of Injury

Given that Plaintiffs' counsel has conceded before the court that the place of injury does not itself give rise to personal jurisdiction, little needs to be said here to address the argument, insofar as it is raised by Plaintiffs. (Pls.' Mem. Opp'n Mot. to Dismiss, 12.) Let it suffice to say that "the Court has consistently held that [the foreseeability of causing injury in another State] is not a sufficient benchmark for exercising personal jurisdiction." *Burger King*, 471 U.S. at 474 (internal citations omitted). The fact that the plane accident occurred in Utah, without more, is insufficient because it says nothing of either Airplanes West's activities directed to residents of Utah, or where the activities that resulted in the injuries took place.

### 2. Airplane West's Website

*Zippo Manufacturing Company v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) is often cited to determine a website's level of interactivity and decide whether exercising

5

personal jurisdiction is appropriate. The *Zippo* analysis attempts to achieve this by proportioning personal jurisdiction with the nature and quality of commercial activity conducted over the internet. *See id*. at 1124. Although helpful, this district has found that the *Zippo* analysis, by itself, is incomplete. In outlining its preferred analysis, the court has stated:

> Personal jurisdiction can easily be found were a defendant clearly does business over the Internet such as entering into contracts which require the knowing and repeated transfer of files over the Internet. On the other hand, a "passive" website that does nothing more than make information available cannot, by itself, form the basis of jurisdiction. In the middle ground lie "interactive" websites, where a user can exchange information with the host computer . . . . The courts that have evaluated these middle-ground cases typically look for "something more" than a website's existence to find specific personal jurisdiction. *Sys. Designs, Inc.*, 248 F. Supp. 2d at 1100.

There is no allegation that there was a "knowing and repeated transfer of files over the Internet," or an "exchange of information with the host computer." Indeed, Airplane's West's website fits squarely within the "passive" category. Perhaps in anticipation of such a finding, Plaintiffs advanced the novel argument before the court that the subsequent communications between the two parties discussing and ultimately contracting for the airplane acted as a substitute for the typical "shopping cart" feature, making the process sufficiently interactive for jurisdictional purposes. Such an argument must be rejected because it seeks to change the nature of the website, and because these other communications are already considered in the analysis.

Even accepting Plaintiff's argument, however, Plaintiffs still fail to demonstrate "something more." Although not well-defined, this "something more" provides an assurance that the underlying and dispositive principles of minimum contacts are not incidentally lost to a merely helpful "interactivity" analysis.[2] Accordingly, the court will continue to look at the

---

[2] For example, suppose a defendant-owner of an interactive website has clearly and purposefully targeted only one jurisdiction although the website is incidentally accessible by others. To require him to submit to the jurisdiction of the court would both distort the jurisdictional requirement and undermine the condition that a defendant "purposefully directed his activities at residents of the forum" and availed itself of the forum's benefits and protections.

intention of a defendant's actions, the direction of the contacts, and the anticipation of injury that would make it reasonable to hale a defendant into court. *See Buckles v. Brides Club, Inc.*, No. 2:08-cv-849, 2010 U.S. Dist. LEXIS 82154, at *20 (D. Utah August 11, 2010) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). In analyzing Plaintiffs' contentions in this light, they are notably weak. Nothing is alleged that supports the notion that Airplanes West's intention was to find, contract with, or harm a Utah resident. The website may evidence a willingness to entertain business with a foreign resident, but there is no reason to believe that the transaction was not intended to be completed within Airplanes West's home jurisdiction. Indeed, there was nothing on Airplanes West's website to indicate any intention to attract purchases from Utah more than from any other state, or for that matter, any other place in the world. The site was an advertisement for planes and services available for sale in California.

Plaintiffs argue that Airplanes West could have taken affirmative actions by using limiting language on its website, by indicating that Airplanes West would "not make sales outside of California, Oregon, and Washington residents." (Pls.' Mem. Opp'n Mot. to Dismiss, 14-15.) The court in *Sys. Designs, Inc.* noted that "there is a device for a company to restrict its potential liability in [another] jurisdiction . . . it could have used limiting language on its website." *Sys. Designs, Inc.*, 248 F. Supp. 2d at 1102. While this is certainly an effective way to limit liability, there is nothing to suggest that it is required to avoid being subject to jurisdiction in any state when an interested purchaser may learn about planes being offered for sale in California. To assume otherwise, mischaracterizes the minimum contacts test. Echoing the *Xactware* court, "[Plaintiffs assert] that defendant targeted Utah residents because [Airplanes West's] website was interactive and had no constraints against Utah residents. However, [Plaintiffs have] presented no [allegation] which demonstrates that [Airplanes West] intentionally targeted Utah residents."

*Xactware, Inc. v. Symbility Solution Inc.*, 402 F. Supp. 2d 1359, 1364 (D. Utah 2005). Plaintiffs' "lack of constraints" argument likewise fails.[3]

### 3. Party Communications

The Supreme Court has found that even a single letter or telephone call to the forum state may meet due process standards, "so long as it creates a substantial connection with the forum." *Burger King*, 471 U.S. at 475 n.18. Although seemingly permissive, it is considered the exception rather than the rule. *See Rambo*, 839 F.2d at 1418 (noting the First and Ninth Circuits' hesitancy in finding personal jurisdiction from general communications.). Thus, whether Airplane's West's communications are substantial enough for the court to find personal jurisdiction will depend on the "*nature* of those contacts." *See id.* (emphasis in the original).

The communications in this case are few and benign. The first *direct* communication between the parties, as alleged by Plaintiffs, was Mr. Robbins' call to Airplanes West to inquire about the plane after finding information about it on the internet.[4] (Pls.' Mem. Opp'n Mot. to Dismiss, 11.) Airplanes West returned the call to "[Mr. Robbins'] Utah telephone number and actively pursued negotiating the sale . . . ." (Pls.' Mem. Opp'n Mot. to Dismiss, 11.) Such allegations are insufficient. Plaintiffs fail to explain or allege how Airplanes West availed itself of the benefits or protections of Utah through those limited communications. Furthermore, the communications between the parties were used for the purpose of entering into a contract. Such a purpose has no relation to the injuries in this litigation. Indeed, Plaintiffs have not alleged that the communications gave rise to defamation, conspiracy, fraud, or other intentional tort actions. Plaintiffs do not allege that Airplanes West took any actions in Utah, which Plaintiffs allege

---

[3] Because Plaintiff failed to show that Airplanes Wests "purposefully directed [its] activities at residents of the forum," an analysis of whether the "litigation results from alleged injuries that arise out of or relate to *those* activities," is moot. *See Burger King*, 4171 U.S. 462, 472 (1985).
[4] Plaintiffs argue that the first contact between the parties was Airplanes West's use of the website to market to Mr.

resulted in their injury. Thus, the nature of the communications between the parties is nominal in both number and quality, and do not weigh into the minimum contacts analysis.[5]

### 4. The Contract

Plaintiffs allege in the Amended Complaint that Mr. Robbins wired $10,000 to Airplanes Wests from Utah to secure his purchase of the aircraft,[6] and that he made the final payment in California after arriving to take possession of the plane. (Pls.' Mem. Opp'n to Mot. to Dismiss, 6-10.) No allegation has been made that the contract was signed, created, or otherwise consummated in Utah. Plaintiffs argue, however, that these facts are sufficient to find jurisdiction over Airplanes West based upon the analysis provided in *Burt Drilling, Inc. v. Portadrill*, 608 P.2d 244 (Utah 1980). In *Burt Drilling*, the Supreme Court of Utah considered the action of a plaintiff who contracted with a defendant for drilling equipment to be used in Utah, among other states. *Id.* at 245-46. The court found that minimum contacts were met because "(1) defendant purposefully contracted with a resident of this State, knowing that it was a resident, and (2) defendant purposefully undertook to supply goods to that resident reasonably knowing or anticipating that those goods would be used in this State." *Id.* at 247. Plaintiffs argue that their case fits squarely within the *Burt Drilling* analysis. There can be no doubt that Airplanes West knew the Plaintiffs were residents of Utah and sold a plane, knowing it was to be used in the state. The failure in Plaintiffs argument, however, is that *Burt Drilling* does not

---

Robbins. The interactivity of the website has been previously considered, and is therefore disregarded.

[5] Plaintiffs cite *Neways, Inc., v. McCausland*, 950 P.2d 420, 423-24 (Utah 1997) to support their contention that the contract is sufficient to meet the prima facie showing of jurisdiction. The court finds *Neways, Inc.* neither binding nor persuasive due to the reliance upon *Burt Drilling, Inc.*, which does not follow the minimum contacts analysis of this Circuit, as stated *supra*.

[6] Regarding the transmission of funds, the Supreme Court in *Helicopteros* has stated:
> Common sense and everyday experience suggest that, absent unusual circumstances, the bank on which a check is drawn is generally of little consequence to the payee and is a matter left to the discretion of the drawer. Such unilateral activity of another party of a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416-17 (1984).

9

follow the contemporary jurisprudence of specific jurisdiction as detailed, *supra*.

With *Burt Drilling* disregarded, Plaintiffs assertion of jurisdiction based upon the contract is tenuous. First, the personal jurisdiction analysis has treated contracts with some hostility. *See Burger King*, 471 U.S. at 478 (stating, "If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Second, and perhaps more importantly, is that nothing before the court explains the nature of contract, the choice of law, who signed it and where, etc. Indeed, there is nothing by which the court can determine that Airplanes West "purposefully directed his activities at residents of the forum," or that it "purposefully availed itself of the privilege of conducting activities or consummating a transaction" in Utah. *See Dudnikov*, 514 F.3d at 1071 (10th Cir. 2008) (internal citations omitted). Without more allegations pertaining to the nature of the contract and its direction to the forum, there is little for the court to consider. Moreover, Plaintiffs claim does not sound in contract, but in tort. Plaintiffs do not allege that they suffered injury because Airplanes West breached its contractual obligations. Accordingly, Plaintiffs' contention that the contract gives rise to jurisdiction over Airplanes West fails.

### 5. Maintenance and Training

Plaintiffs acknowledge that the maintenance and training of the airplane occurred in California, but allege that such activities occurred "with knowledge that the Robbins were Utah residents who purchased the aircraft with the intent of returning back to Utah with it . . . ." (Pls.' Mem. Opp'n Mot. to Dismiss, 6.) Although true, this infers a misstatement of the minimum contacts test. The question before the court is not whether Airplanes West simply knew that the Robbins were Utah residents, but whether it directed its contacts to residents of the forum state in

order to purposefully avail itself of the benefits and protections of Utah. Indeed, the wrongful conduct about which Plaintiffs complain is the failure to maintain and train in California. And, under the *Burger King* standard, the dispositive fact is that the cause of the injuries arose from those activities occurring in California, not Utah. Plaintiffs' contention therefore fails.

## **CONCLUSION**

The Supreme Court has stated that "the quality and nature of an interstate transaction may sometimes be so random, fortuitous, or attenuated that it cannot fairly be said that the potential defendant should reasonably anticipate being haled into court in another jurisdiction." *Burger King*, 471 U.S. at 486. This describes Airplanes West's association with Utah. Through its website, Airplanes West's advertisement of its products and services was accessible in every state and in most countries in the world. The fact that the website was accessible in Utah was not a sufficient contact for Airplanes West to anticipate it would be subject to suit in Utah. Even considering Airplanes West's return call to Mr. Robbins and the eventual contracting for sale of the airplane, nothing evidences that Airplanes West "purposefully directed" its activities at Utah residents or "purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state." And insomuch as nominal contacts were made with the forum, the current litigation does not result from alleged injuries that arose out of or relate to *those* activities. *See Id.* at 472.

Plaintiffs have therefore failed to show that Airplanes West has made such minimum contacts with Utah in order to satisfy the court of its jurisdiction. An analysis of "the traditional notions of fair play and substantial justice" is therefore moot. Likewise, because jurisdiction is found lacking, a consideration of Airplanes West's laches defense is also moot. Defendant Airplanes West's Motion to Dismiss is GRANTED.

DATED this 6th day of January, 2011.

BY THE COURT:

_____
Clark Waddoups
United States District Court Judge